Good morning. James Huffman for Ms. Holloway. Are you going to argue both at the same time? No. We'll argue Holloway. You have 15 minutes, including rebuttal time. And then we will separately argue Mitchell, and there's only five minutes aside for Mitchell. Very good. Thank you. Ms. Holloway has brought an action for Section 1983 violations for four frivolous lawsuits. She discovered the nature of the plan and the intent after listening to the audio records in February of 2012. Her lawsuit was filed within two years of that date, so the date of discovery should apply to all of the claims. The first claim, the OEGC complaint, the ethics complaint with the Oregon Ethics Commission, was filed before the two years, but she filed the suit within two years of the decision that dismissed it as an unfounded claim. When was she excluded from the executive session? She was excluded from executive session by a vote of the board. When? Well before — well within the two years. There's no claim that that was not within the two years. I have the date and the brief for that meeting. We have the — we found the transcript was a public meeting and it was well documented. There's no claim that that was outside the two years. How many — I'm sorry. How many meetings was she excluded from? I didn't take it to keep a count, but one of the ones in particular was the meeting in February 2012. I'm sorry, it was two months before that. It was a January or December meeting in which the — she was excluded from, and they conspired to bring frivolous claims. They brought two more frivolous claims, bully claims, against her after that that were unfounded in law, in fact. Well, your complaint says that the decision of the board to exclude her was October 13, 2011, and she was informed of it on October 27, 2011, and then there was another event in December of 2011. Are there any others that — The exclusion? Yeah. She was excluded from all of them until her term was ended by a recall, and that date is in the — How many meetings was she excluded from? I don't — I didn't take a count, but I could come up with that number. Every single executive session that was held after that. There were many other things. She was denied access to emails. The Hardy case — Wait, wait, wait. Now, those are different issues. Let's focus for a moment on the executive committee. It seems that in the complaint, there's an allegation that she was excluded from one meeting, and my colleague referred to the date. Do you have, or can you cite us to anywhere in the record where she was excluded from a specific executive committee meeting on specific dates? I don't have that at my fingertips, but I do know that there were more than one. You do know that? Yes. And you base that on what? Well, one of the hearings, she got a copy of the audio record from a fellow counselor that she listened to in February of 2012, where they all met and laid out the plan to disclosures of misdeeds by the — This is an enormous complaint, so it's a little bit hard to follow, but it appeared to me that all of the allegations of what she had discovered related to the October 13, 2011, executive session meeting at which the decision was made and the December 8, 2011 meeting that she was excluded from when she tried to show up. I didn't see any other specific ones. I may be missing something, but it doesn't actually matter except for purposes of the statute of limitations. Well, she was excluded from meetings during the two years prior to this lawsuit being filed, and she's referred to those meetings. Those certainly can be proven, and this is at the pleading stage. She clearly was excluded from at least one meeting, and that's sufficient to be a violation of her rights as a commissioner. Okay. Let's say — argue, I know, that under Oregon law that it was improper for the majority to exclude her from the executive committee meeting. Let's say that's true. She has now been recalled or removed from the commission. What relief would she be entitled to at this point? Well, her freedom of speech was denied, and that was part of the — What? Her freedom of speech was suppressed. Let's just say that that's correct. What is her remedy at this point? Money damages. What damages would she suffer? Beyond nominal damages. Beyond nominal damages. The embarrassment, the humiliation. She — as a ratepayer in the district, her funds, the district's money was wasted. Millions of dollars of money were wasted by this district. A million dollars was paid to their lawyer, who had a record for prostitution convictions. That cannot — I don't understand how that sort of damage can be recovered if the violation is that she was excluded from a — from two meetings, one in October of 2011 and one in December of 2011. And that meeting was banned. Well, certainly her attorney fees are an out-of-pocket expense, all this frivolous litigation. And that certainly ain't an expense. She was — Why is that actionable in view of the Norr-Pennington Doctrine? Well, because they were sham cases. The sham exception to the Norr-Pennington Doctrine is a clear exception to the First Amendment. They don't have the First Amendment right to use these lawsuits as weapons to beat up people and take away their First Amendment rights. That's clear in the case law and the Supreme Court cases. So I want you to assume for the sake of this question that her only viable claim is exclusion from executive session. And if that's so, then she would presumably be entitled to nominal damages and attorney fees, perhaps, that are related specifically to that claim. But what other damages would be available if that were her only claim? The monetary damages and not general pain and suffering and amelioration and mental suffering. How could she be entitled to that for being excluded from an executive committee meeting? Do you have any case law that says someone would be entitled to such damages for a like exclusion? Yeah. I don't have a case at my fingertips. That wasn't the basis for the court ruling below and that we didn't — it wasn't an issue that was made — attacked by motion. I understand. But as my colleague has pointed out, assume for a moment, just for purposes of our discussion, because we're trying to get you to help us to understand the proper basis for your case. If the only claim that remains viable is a First Amendment violation of your client's rights because she was excluded from an executive committee meeting, whether it was one or two, and based at least on my analysis, I don't know that she would be entitled to more than nominal damages. So please tell us why she would be entitled to more, and if so, what damages she would be entitled to based solely on the fact that she was excluded from one or more executive committee meetings? Well, I've not researched this issue, but in general it was my understanding that the First Amendment is a criminal offense to violate people's constitutional rights, and it's a civil offense, and general damages are applicable, meaning the emotional harm that she gets because she can't do her job and speak on a matter of public concern and do her job. Counsel, you said it's a criminal offense to deprive someone of a constitutional right. Now, while there certainly can be such. It can be. It can be. But are you saying that any time somebody violates a constitutional right, it's a criminal offense? No, but the First Amendment has criminal offenses to it as well. I mean, the 1983. I'm not sure how that's relevant, but I take it your position is that if someone is elected to a public body and is wrongly excluded from an executive session, it's a crime? Is that your position? I'm not saying that at all. This is not a criminal case. I was asked to describe what is the offense to the person. A person who is a crime victim certainly feels or suffers a wrong. It's a civil wrong, too, and the civil wrong includes the pain that one feels emotionally and mentally from the wrong being inflicted upon them. The First Amendment is a very important right, one of the most important ones we have, and I've never seen a case that described the — that dismissed the First Amendment case because you weren't hurt bad enough. I don't think that's a basis to dismiss a case. Can you give us some analogy, then, on what damages she should be entitled to based upon her exclusion from one or more executive committee meetings? I think that the exclusion and her inability to participate in the meeting where they discussed the attack against her through a series of unwarranted, unfounded and sham lawsuits, she was unable to dispute the decisions that were being made in executive sessions because she was excluded. I get that. And, you know, there's a certain political give and take in all that. But she wasn't there. She was excluded. Let's assume, arguendo, that that violates Oregon law. So I'm still trying to get you to tell me on what basis she would be entitled to more, bless you, nominal damages, some case, some analogy, some statute. What are you relying on? Well, I wasn't ready to make a jury argument today. We would be willing to take nominal damages would be a sufficient award if that was all we were entitled to. Okay. That answers it. I'm not suggesting that that's all she's entitled to, but I think that would be sufficient. Okay. Well, that may be. Yes. Okay. The other thing she was denied was her e-mail access. In the Hardy case out of Lane County, a federal district court judge ruled that that was a violation of the Section 1993 case. I know that's a lower court decision, not the Ninth Circuit, but it's another fellow judge of the same district that our judge ruled on. And that commissioner was denied e-mail access, as we allege in this case. These offenses against her, I think, were egregious. Had there ever been executive sessions except in relationship to her? Pardon? Had there ever been executive sessions held except the two you've cited? Yeah. They regularly met in an executive session at this district. And that wasn't litigated, so I don't have the ability to give you an exact count. But they were frequently, especially with this district, with all the shenanigans they were involved in, they had numerous executive sessions. And so probably I wouldn't. But she was excluded only from two. No, I didn't suggest that at all. I think she was excluded from every single one, and they probably met. That's what your complaint says. That she was excluded from two? Two. I don't remember trying to delineate. October 13, 2011, and December 8, 2011. That's all you cited. Well, we filed the case. That very well could be. I didn't make an attempt to list all of them, and I'm not sure I did. And I can't represent that I did or did not. But I think one of them is sufficient. Why was she prevented from doing her job as an elected official to the board? Because she identified. Nothing could be done in that executive session. Pardon? Nothing could be done at the executive session. Well, this group did. They did things. They made decisions, and they did illegal things during the executive session. But the law still requires that she be allowed to perform that duty, just like Mr. Julian Bond had the right to go to the legislature, even if he wasn't going to be effective there. And so that's a constitutional right. She went to the body. She went to the legislative body. She wasn't prevented from doing that. She took her seat. The TriMet case that we submitted last week in the supplemental authorities indicates that that is part of the meeting processes of districts in Oregon, that they have that right to be there for that. Again, I think for our purposes, let's just assume that she shouldn't have been excluded from these executive committee meetings. But go on from there. What else is involved here? My colleague has mentioned the North Pennington Doctrine in connection with the lawsuit. She said there was sham litigation. The reality is it went back and forth. Reasonable people could disagree about them. Why were these sham litigation? I mean, you initiated a lot of these things. Was that sham litigation as well? Absolutely not. Every case we filed was a legitimate case. The reason she was pursuing this issue was because Mr. Moore was taking his illegally expending money. He was terminated from the Lottery Commission for having $850,000 of unlawfully spent funds. He was doing the same thing with this district. And he was exceeding his statutory authority. He paid bribe money to Mr. Doyles. What's that got to do with the First Amendment? Pardon? What's that got to do with the First Amendment? That was the reason for the retaliation. I was asked why she was attacked like this. She was attacked. It may have been a pretext for the retaliation, but it wasn't the retaliation. The retaliation, you say, is the violation, not the pretext. Right. But that's the reason they targeted her. But it's not the pretext. It's not the reason. The only thing that's actionable are the instances of exclusion from the executive session, assuming that that deprived her of something that had to be done as a council member. Yes. But she had many other consequences besides that. She was not allowed to speak to Van Beek. I've only got one minute left. Would you like to save that for later? I'd like to save the minute. You may do that. Thank you. Thank you. Mr. Frey? May it please the Court, good morning. I'm Blake Frey. I represent the appellees. A lot of the questions obviously focus on the allegation that the appellant was excluded from executive session meetings. As I read the complaint, and obviously it's kind of difficult to read the complaint because it's so long, the allegation is that there was a vote to exclude her from a particular executive session meeting. No, that's not the allegation. I'm sorry to interrupt, but I believe the allegation is that she was informed that she would be excluded not only from the October 13th meeting, but from future meetings, and that she attempted to attend a future one in December and was not permitted to attend. So there were two meetings, as I understood it. Regardless, one, two, it shouldn't really matter the number as long as they're within the statute of limitations. Why wouldn't that be actionable? We have to take the complaint as true, meaning that there were these retaliatory motives for the exclusion. So we have a similar case from this circuit, Blair v. Bethel School Districts, that talks about the standard, the acts taken by your legislative peers, for lack of a better word, that are How does that deal with an official? The appointment from the body of somebody to be an official representing them. That's not here. Here, it's an allegation that she couldn't do her job as a board member because she wasn't allowed to participate in executive sessions. I believe you're referring to the Supreme Court case Bond, and that was an elected official in a state who wasn't allowed to sit in his office as in the House of Representatives of the state. I'm referring to Blair v. Bethel School District, which is a case which was a retaliation claim brought by a school board member who had been voted out of his position as vice president of the school board. Yes, but the question in that case and what may be different here is that under Blair, there's something that can be considered a viable claim if the act deprives the person of the rights and prerogatives of the office. And that wasn't true in Blair, but I guess what I'm struggling with in your position is it seems to me that a duly elected member of a public body in Oregon has the right to attend meetings of that public body, including those that are held in executive session, the point of that being that there may be confidential materials looked at that employees in general or members of the public shouldn't see. But that seems to me a core function of the governing body, to meet in regular and executive session. So why wouldn't that be one of the rights and prerogatives of the elected office? Well, the language from Blair is that the only kinds of alleged retaliatory acts that can be the basis of a retaliation claim, when you're talking about your legislative peers, are acts that deprive the person of the authority that they're entitled to. That's exactly what I'm saying. The person has the right, when they are elected to a public body, to attend its meetings. Isn't that the core function of a board member? The authority that a board member has is to make board policy in public meetings, to vote on board policy. Executive session meetings are informational only. That is not how I read the statute. It seems to me that they are permitted to deliberate. They are permitted to view confidential documents. So executive session is a means for the board to examine and consider materials that are not publicly available for some confidential reason. But if it's an integral part or can be an integral part of the decision-making process, I don't understand why it isn't one of the core rights and prerogatives of the office, which is the phrase that Blair used. I don't disagree that an executive session is not important in making policy decisions, in voting on policy decisions. But I would point out that the complaint alleges that all executive session meetings are recorded. And also... Well, how does that help? I mean, that's like saying I don't get to come to oral argument, no one will let me in, but I can listen to what other people ask or say. The right of a board member is to influence the others by debate and discussion. If all board members decide how they're going to go in a private debate which a board member is excluded from, she can't perform her functions. That's the essence of the exclusion. Blair is different. And I'd like to point something out to you from the opinion. He was removed from a particular position on a school board by the very people who elected him to the position in the first place. The board's objective in stripping Blair of his leadership position ostensibly wasn't to punish him for his advocacy, but instead to put in place a vice president who better represented the majority view. And went on to say that his authority as a member of the board was unaffected. He retained the full range of rights and prerogatives that came with having been publicly elected. So that's different from being deprived of a forum in a very place that is influencing and creating the ideas that ultimately will be decided by the board. But she still had available to her the information that was revealed in any executive session meeting. She doesn't have a chance to influence that decision. She doesn't have a chance to influence the others. Because she's excluded from the meeting where that takes place. But she can still influence the other members in open meetings elsewhere, and she can also cast her vote on the board. And I'm not going to go into the executive sessions because that's not part of what's recorded. I mean, that's the allegation of the complaint. We don't know if any of this is true or not true. That's not our function at this point. We're just looking at what the allegations are. Counsel, why don't we just assume for a moment, arguendo, that the members of this panel believe that Oregon law required that Ms. Holloway be able to participate in executive session. Otherwise, it wasn't a meeting under Oregon law, just for purposes of our discussion. If that's true, would you agree that she would have a right to some, if you will, damages? And if so, what might those damages be based on her exclusion from the executive committee meetings? Again, I'm asking you to assume what Oregon law is in this case. Well, Your Honor, it's a Section 1983 claim, so presumably she's entitled to whatever damages, compensable damages that she can prove. Do you have any idea what those might be? Well, I guess you would have to ask Ms. Holloway, but presumably there's claims for compensable damages including emotional distress. Now, can she actually recover that? I mean, would that actually be awarded? I don't know. But theoretically, I assume it's possible. But I would also like to point out the Oregon executive meeting laws don't, unlike the public meeting laws, don't require or don't mandate that every board member attend an executive session. No, of course not. They have to have it available to them. If someone has something better to do, they don't have to go. It's not mandatory. But an executive session is a meeting of the body that is closed to certain people, generally would-be employees or members of the public. But it is a meeting, and a meeting is the convening of the governing body. So the fact that it isn't mandatory to attend really doesn't get you very far. Well, I didn't mean to say that it wasn't mandatory. What I meant to say is that the law doesn't require or the law doesn't mandate anywhere that all members of the board be present for an executive session meeting before it can be considered. They have to be available. It has to be available to them because it is defined as a meeting of the board with certain characteristics. And a meeting of the board is the convening of the board, the whole board. Now, that doesn't mean everyone will attend every meeting, but in order for it to be a meeting within the meaning of the law, it has to be the convening of that board. Well, under the open, under the public meeting laws, that's true. Well, I'm looking at the 192.610 sub 2 and 5, which are the relevant provisions. An executive session is a meeting of a certain characteristic, but meeting means the board. Not selected members of the board and nobody else on the board is allowed to show up. Correct. But the whole board or a quorum of the board is not required to be there before it's considered a meeting. This is in contrast to the public meeting laws, where a validly instituted quorum of the board has to be present before the meeting is valid and before any sort of policy can be voted on. There's a difference between not being present and being excluded. Yes. Counsel, I think you're maybe beating against a brick wall here, so let's maybe move on to the sham litigation defense that's raised by your colleague. Norm Pennington seems to apply here unless that sham litigation defense is applicable. Would you like to address why you think his argument that this was sham litigation is applicable? Well, I think the overriding argument has been I alleged in my complaint that these various kinds of administrative complaints and civil rights lawsuits, including those filed by the district's own employees, were a sham. And the objection to the district court's opinion is essentially that the district court didn't take my allegations that the litigation was a sham as true as the district court was entitled to do on deciding, in effect, what is a motion to dismiss standard. However, what the district court said is that all the allegations in the complaint that nominally go towards showing that these various kinds of litigations were a sham were totally conclusory. In some cases, the allegation is literally only that the litigation is a sham. I mean, there's no other word used. There aren't any allegations of fact going towards showing that the allegations are a sham, other than basically that Ms. Holloway herself didn't view them as meritorious. What does our case law require, in this case, a plaintiff to show in a pleading to, if you will, trigger the use of the sham allegation defense? Obviously, conclusory statements are not enough, and you point out that the district court noted that. What would Ms. Holloway's counsel have to do to bring the sham litigation defense to the fore? Well, first of all, I'd point out that to overcome Knorr-Pennington immunity, as it's called, requires a heightened pleading standard. So it's not just a normal pleading standard. It's a heightened pleading standard. But the allegations that go towards showing that litigation or some sort of petition of the government is a sham are allegations showing that the petition was objectively unreasonable, in the sense that no reasonable litigant would ever expect to prevail. Also, there is kind of a requiring of bad faith. You can file lawsuits as a weapon. That's perfectly acceptable, assuming that you prevail. What's not allowed under Knorr-Pennington is both the lawsuit that is objectively speaking has no chance of prevailing, and also bad faith in the sense that you're not trying to prevail on the merits. You're trying to affect your adversary, for lack of a better word, by the side effects of the lawsuit, as opposed to the ruling that you hope to get from the court. Let me ask you about a slightly different question. The complaint alleges a number of deprivations by the board. For example, the lowering of insurance coverage, access to certain materials. Those particular actions, according to my understanding, were made applicable to all the members of the board. Does that immunize those actions from any adverse consequences because it affected everyone? Well, those are not actions which deprive Ms. Holloway from her authority as the board. But in addition, it was the insurance carrier that dropped the district from coverage. That's what's alleged in the complaint because of the exceeding litigation costs. The district then acquired new insurance from an additional carrier. The new insurance wasn't as good for cost reasons. Later in 2015, after Ms. Holloway was recalled, the original insurance carrier, SDIS, picked up the district again. So the action was not initiated by the board in the case of the insurance. It was the insurance companies themselves making presumably a business decision, took the action it did, and the policies that resulted applied equally to all board members. Is that right? Correct. And I believe the reference to the insurance coverage also refers to a decision by a bully charge was filed against Ms. Holloway. She asked the insurance company, the district's insurance company, to provide defense. The insurance company declined, finding after it concluded that the claim against her was outside of its policy. She then asked the board for defense under the Tort Claims Act. The district hired an outside law firm to decide whether or not it was required to defend her from the claim under the Tort Claims Act. And the law firm concluded that it didn't, and she also sued the law firm. Thank you, counsel. You have a bit of rebuttal time. May I respond to that last question? We did adequately plead all of the sham elements. The OGEC was a ‑‑ we alleged the facts that they used their claim based on, and they said that she was getting public records to prove fraud by one of the fellow board members for false claims for reimbursements, and then they claimed that she was doing it for her husband's benefit. She needed it for herself. There was no factual basis to support that claim. It was dismissed as unfounded by the OGEC. On the bully claims, the State of Oregon Bully Department, whatever they call it, they've decided that she was not the employer. There was no adverse employment action against the gentleman. He had no case factual or legally. Counsel, is it your position that the fact that a lawsuit is unsuccessful means that it's sham? No, we pleaded the facts that showed it was a sham. He had no right to claim against her. She was not his employer, which is required. She didn't ‑‑ he had no adverse employment action. He was not a victim of discrimination. She sued her as an accomplice when there was no principle. That's what the decision said. How can you sue somebody an accomplice when there's no principle involved? Every single case was unfounded, and we alleged the details that showed that was unfounded. So there was an adequate allegation of sham. The decision made by the trial court ignored all of the allegations we made that showed the details that showed that it was a sham case. I mean, that's the pleading requirements. Thank you, counsel. Your time has expired. The case just argued is submitted, and we thank both counsel for their arguments but you can remain in place because the next case
judges: Graber, M. Smith, Hellerstein